## Philips, Reynolds, & Co. *vs* Barbaroux.

ERROR TO THE LOUISVILLE CHANCERY COURT.

*Consignor and consignee. Costs.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

CHANCERY.

*Case* 43.

*October* 16.

The case stated.

JOSEPH BARBAROUX, being indebted to *Philips, Reynolds & Co.* gave them, as collateral security, a mortgage on two slaves and assigned to them a promissory note for $300 and an order drawn in his favor on "*York Brothers*" at New Orleans by *W. G. Bakewell,* for "the proceeds" of some bagging and rope consigned to them on a shipment from Louisville a few days previously, after retaining for the consignor $2250, and deducting charges. By the terms of the mortgage, six months were allowed for paying the debt, and the slaves were to be sold for whatever balance should remain unpaid at the expiration of that period.

The mortgagees attempting to coerce their debt by legal means before the expiration of the time given for payment by the mortgage, *Barbaroux* filed a bill for enjoining them. Not answering until the prescribed period of indulgence had expired, they made their answer a cross bill, and prayed for a foreclosure and sale, for a balance alleged to be due after deducting $300 which they had collected on the assigned note, and $529 19 cents alleged to have been the amount of the proceeds of the sales of the bagging and rope, after making the prescribed deductions and allowing a small loss for exchange.

In his answer to the cross bill, *Barbaroux* insisted that, by the consignment to "*York Brothers,*" they were directed to sell "on arrival"—that, by neglecting to do so, they had subjected themselves to an action for the difference between the amount for which the consigned property might have been sold "*on its arrival,*" and the reduced sum for which it was long afterwards sold, at various times, in small parcels—that, as assignees, *Philips, Reynolds & Co.* ought to have forced a sale sooner, or proceeded against the consignees for damages—and finally,

Vol. II. 12

that they had been guilty of culpable and injurious negligence in failing to collect more on account of proceeds than they had, or in omitting to return the order when they found that there was not a prompt sale.

Upon the cross bill and answer thereto, the Chancellor decided that the mortgagees were justly chargeable with the amount for which, as he assumed, the consigned goods might have been sold "on arrival," after deducting the charges and the sum of $2250; and by this process and by allowing also some small credits for alleged mistake or usury, the Chancellor extinguished the whole mortgage debt, and rendered a decree in favor of *Barbaroux* for costs.

That decree we cannot approve.

The assigned order on the consignees for a portion of the proceeds of sale, gave to the assignees no other authority than to present the order and receive the amount to which they were entitled, after sale had been made. The consignment itself was not transferred to them, nor had they any control over it or over the consignees. Besides, there is no proof of the assumed fact that the consignees were, by the terms of the consignment, instructed to sell forthwith. The only evidence to that effect, is a memorandum made by *Bakewell* on the order drawn by him in favor of *Barbaroux*; and this is, surely, no more than a declaration by the consignor, after the date of the consignment and the shipment of the goods, which cannot be admitted as proof of the fact against the consignees.

*The holder of an order, given by consignor on consignee, of bagging, &c. for part of the proceeds of the sale thereof, is not authorized to control the sale or to sue for not selling, but only to present the order and receive the proceeds.*

And there being no depositions, it certainly does not appear that the consignees acted in bad faith, or could have made a larger amount than they did. The fact that, immediately after the reception of the bagging and rope, they sold small portions thereof is, without explanation, intrinsic evidence tending to the presumption that they were unable then to sell more at the same price, rather than to the conclusion adopted by the Chancellor that they ought to have sold the whole consignment at the same time and for the same price.

The record does not allow the imputation of negligence or breach of duty; nor does it authorize the presumption that the mortgagees collected or ought to have collected

more than $556 95. The bill itself alleges that they presented the order promptly, and had it accepted. They had no authority to control the consignees or to sue them for failing to sell. The consignor still retaining the principal interest in the consignment, his assignees of a portion only of the proceeds could not direct the sales without his concurrence, nor sue for a breach of the consignment.

But, as already suggested, it does not sufficiently appear that there was any breach of duty by the consignees, nor that they sold or could have sold for a higher price than they accounted for—nor that *Barbaroux* has been injured, in any respect, by the conduct of his assignees of the order.

This main point being the only one noticed in the argument of the cause in this Court, we will consider no other.

It, therefore, seems to us that the mortgagees are chargeable with only what they actually received of the proceeds of the bagging and rope, without any discount for alleged loss on exchange; and that, as *Barbaroux* had good cause for filing his bill, he is entitled to a decree for all costs accruing before the filing of the answer and cross bill, but is liable to the costs on the cross bill.

Decree reversed and cause remanded.

*Duncan* for plaintiffs; *Guthrie* for defendant.

Costs are properly adjudged in behalf of a party who has good cause to sue at the time he does sue, up to the filing of answer, though such party is ultimately unsuccessful by the lapse of time before filing answer, and the happening of other facts not then existing.